# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JOY CHACON,
                    Appellant,

          v.

DEPARTMENT OF HEALTH AND
     HUMAN SERVICES,
                    Agency.

DOCKET NUMBER
NY-1221-18-0167-W-2

DATE:  February 28, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

Joy Chacon, Connelly, New York, pro se.

Fernando Morales, Esquire, New York, New York, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the appeal to the Northeastern Regional Office for adjudication of the merits in accordance with this Remand Order.

## BACKGROUND

The appellant was a Quality Program Specialist for the agency's Office of Communications and Quality Program Management, a subdivision of the Office of Regulatory Affairs (ORA), which is itself a subdivision of the Food and Drug Administration. *Chacon v. Department of Health and Human Services*, MSPB Docket No. NY-1221-18-0167-W-2 (W-2 appeal), Appeal File (W-2 AF), Tab 17 at 4-5. In August 2014, the appellant was working in ORA's Northeast Regional Laboratory (NRL). W-2 AF, Tab 8 at 29-31. Her duties during this time included working to ensure that NRL was in compliance with the Quality Management System and serving as a liaison for bi-yearly audits by the American Association for Laboratory Accreditation (A2LA). *Chacon v. Department of Health and Human Services*, MSPB Docket No. NY-1221-14-0372-W-1, Final Order, ¶ 2 (Jan. 4, 2017).

On August 22, 2014, the appellant "sent in confidence" to A2LA an email regarding NRL management's "obstructive activities," including orders to "sign[] without review," "falsif[y]," or "close numerous noncomformance and complaint reports" so that such reports would not be "'visible' to [A2LA] in NRL's upcoming assessment," and describing punitive personnel actions taken against staff who have "protested against or refused to comply with unlawful orders to 'cover-up' issues that may be perceived adversely." W-2 AF, Tab 8 at 29-30. The appellant's email further stated that she was personally "ordered to 'close' and/or 'withdraw' noncomformances or complaints for which corrective/preventive actions have not been completed." *Id.* at 30. She included specific examples. *Id.* In its reply, A2LA stated that it was "very concerned" by

the issues that she raised and assured her that it would keep her "identity as the source of this complaint confidential." *Id.* at 29.

Subsequently, A2LA representatives visited NRL to investigate a complaint that was brought to its attention, presumably the appellant's email. *Id.* at 33. A2LA ultimately suspended NRL's laboratory accreditation in September 2014 after its investigation revealed noncompliance with its requirements. *Id.* at 33-35. Even though NRL regained its accreditation in May 2015, the appellant was allegedly subjected to numerous acts of reprisal over the next several years following the disclosure. *Chacon v. Department of Health and Human Services*, MSPB Docket No. NY-1221-18-0167-W-1, Initial Appeal File (IAF), Tab 6 at 9-10, 13-50.

On March 8, 2018, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency retaliated against her because of, among other things, her disclosure to A2LA (OSC Docket No. MA-18-2621). *Id.* at 6-12. She supplemented her OSC complaint numerous times with additional acts of retaliation that she allegedly suffered. *Id.* at 13-50. In a July 18, 2018 email, OSC advised the appellant that, because she previously indicated that she "intended to exercise [her] right to file an [IRA] appeal with the MSPB," there was "no basis for [its] inquiry into the[] matters" that she raised, and it closed its inquiry into her complaint. IAF, Tab 4 at 13-14.

This appeal followed. IAF, Tab 1. The appellant requested a hearing. *Id.* at 2. During the pendency of this appeal, the appellant filed another OSC complaint in which she indicated that she was refiling her prior OSC complaint and submitting additional allegations (OSC Docket No. MA-18-5547). W-2 AF, Tab 4 at 9-18. Among other things, the appellant noted in her correspondence with OSC that she had received a notice of proposed removal. W-2 AF, Tab 9 at 7, Tab 18 at 4-12. The administrative judge dismissed the appeal without prejudice to provide the appellant the opportunity to exhaust her claims before OSC. IAF, Tab 17 at 2-4. The appeal was refiled on January 28, 2019. W-2 AF,

Tab 1. OSC issued a closeout letter for the appellant's second complaint on February 7, 2019. W-2 AF, Tab 9 at 7-8. The appellant was ultimately removed from her position, effective March 8, 2019, and a separate appeal was docketed regarding her removal. W-2 AF, Tab 18 at 13-17; *Chacon v. Department of Health and Human Services*, MSPB Docket No. NY-0752-19-0108-I-1, Initial Appeal File (0108 IAF), Tab 1.

On April 29, 2019, the administrative judge issued an initial decision dismissing the refiled IRA appeal for lack of jurisdiction. W-2 AF, Tab 28, Initial Decision (ID). The administrative judge found that the appellant exhausted with OSC her August 22, 2014 A2LA disclosure and approximately 102 alleged reprisal actions, ID at 4, and that she nonfrivolously alleged that her A2LA disclosure was protected, ID at 7. The administrative judge found that the appellant failed to nonfrivolously allege that her disclosure was a contributing factor in any reprisal actions. ID at 7-10. The administrative judge further found that the appellant failed to nonfrivolously allege that 79 of the 102 reprisal actions constituted appealable personnel actions.[2] ID at 11-12. She also found that the appellant failed to nonfrivolously allege that she was subjected to a

---

[2] The appellant does not challenge the administrative judge's finding that she failed to nonfrivolously allege that these 79 actions constituted personnel actions under 5 U.S.C. § 2302(a)(2)(A). ID at 11-12. The Board generally does not consider issues that are not raised on review. *Roche v. Department of Transportation*, 110 M.S.P.R. 286, ¶ 13 (2008), *aff'd*, 596 F.3d 1375 (Fed. Cir. 2010). Although not explicitly raised by the appellant on review, however, we modify the initial decision to find that the agency's decision to propose the appellant's removal on February 4, 2019 (personnel action 101) is a nonfrivolous allegation of a personnel action. *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 5 (2011); W-2 AF, Tab 18 at 4-12. Thus, the only purported personnel actions that remain are numbered 1-2, 4-5, 33, 39, 63, 72, 77, 82, 85-95, 98, and 100-01. In addition to the proposed removal, these personnel actions concern the appellant's exclusion from or lack of work assignments, denial of credit or awards for her accomplishments, lowered performance evaluations for calendar years 2015 and 2016, derogatory treatment directed to her, a letter of reprimand, a letter of action (leave restriction), charges of absence without leave, denial of sick leave, a downgrade of her position description and duties, and the termination of her telework agreement. IAF, Tab 14 at 5-68; W-2 AF, Tab 4 at 2-5, 18, Tab 8 at 5-22. We will discuss the personnel actions below in our analysis of contributing factor.

hostile work environment.  ID at 12-13.  The administrative judge noted that, although the appellant listed her removal as among the incidents of reprisal at issue, that action was the subject of another appeal and would not be adjudicated in the instant IRA appeal.[3]  ID at 3; *see* 0108 IAF, Tab 31 (dismissing the removal appeal for failure to prosecute).

The appellant has filed a petition for review, arguing that (1) she nonfrivolously alleged that her 2014 A2LA disclosure was a contributing factor in the personnel actions to which she was subjected, (2) the administrative judge failed to address her other alleged whistleblowing disclosures and protected activities, (3) the administrative judge should have joined her IRA appeal and removal appeal and found her removal to be improper, (4) the administrative judge failed to consider her submissions, including her motions and stay request, (5) the administrative judge improperly referenced her disciplinary record from 2012 to 2014, and (6) the administrative judge was biased.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response opposing the petition.  PFR File, Tab 3.  For the following reasons, we find that the Board has jurisdiction over the appeal, and we remand the appellant's allegations to the administrative judge for further adjudication in accordance with this order.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a whistleblowing disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C.

---

[3] We find that the appellant is precluded from raising her removal in this IRA appeal because she elected to appeal it directly to the Board under the procedures of 5 U.S.C. chapter 75.  *See* 5 U.S.C. § 7121(g).  Although the appellant raised the proposed removal in one of her whistleblower complaints, OSC closed that complaint before the removal decision was issued.  W-2 AF, Tab 9 at 7.  Twenty-three days after the removal decision was issued, the appellant filed her chapter 75 appeal.  0108 IAF, Tab 1.  There is no indication that she raised the matter with OSC in the interim.

§ 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).

Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Salerno*, 123 M.S.P.R. 230, ¶ 5. If the appellant proves by preponderant evidence that her whistleblowing disclosure or protected activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the whistleblowing disclosure or protected activity. *Id.*; *see* 5 U.S.C. § 1221(e)(1)-(2).

We find that the appellant established the Board's jurisdiction over this IRA appeal because she made nonfrivolous allegations that her August 22, 2014 A2LA disclosure was a contributing factor in personnel actions 1-2, 5, and 85.

As previously indicated, the administrative judge found that the appellant exhausted the A2LA disclosure with OSC and nonfrivolously alleged that it was protected as a violation of agency rules. ID at 4, 7. Neither party challenges these findings, and we see no reason to disturb them. Accordingly, to establish the Board's jurisdiction over this appeal, the appellant need only nonfrivolously allege that this disclosure was a contributing factor in a personnel action taken against her.

To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Salerno*, 123 M.S.P.R. 230, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through

circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.[4] *Id.*; *see* 5 U.S.C. § 1221(e)(1).

A personnel action that occurs within 2 years of an appellant's disclosure satisfies the timing prong of the knowledge/timing test. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 25 (2016). The administrative judge noted in the initial decision that only eight reprisal actions occurred within 2 years of the A2LA disclosure, and of those, only actions 1-2, 5, and 85 constituted personnel actions. ID at 8-9, 11-12. The appellant did not challenge either of these findings on review. Therefore, concerning the A2LA disclosure, we will only consider personnel actions 1-2, 5, and 85 in our analysis of contributing factor.

Personnel action 5 concerned the appellant's lowered calendar year (CY) 2015 evaluation. IAF, Tab 6 at 18, Tab 14 at 9; W-2 AF, Tab 21 at 4-16. Although we cannot tell when the appellant's CY 2015 performance evaluation was issued, it appears that she electronically signed the evaluation on February 18, 2016. W-2 AF, Tab 21 at 4. This time frame falls within 2 years of the appellant's August 2014 disclosure to A2LA, and we find that the appellant has made a nonfrivolous allegation that the timing component of the knowledge/timing test is satisfied. *Scoggins*, 123 M.S.P.R. 592, ¶ 25. We similarly find that appellant made a nonfrivolous allegation that personnel actions

---

[4] As an alternative to the knowledge/timing test, the Board may consider evidence such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013); IAF, Tab 3 at 4. However, because we have found that the appellant made a nonfrivolous allegation of contributing factor under the knowledge/timing test, we need not consider whether she satisfied the alternative method to establish contributing factor.

1, 2, and 85 occurred within 2 years of her August 22, 2014 A2LA disclosure.[5] IAF, Tab 6 at 14-16; W-2 AF, Tab 1 at 6.

We now analyze the knowledge component concerning personnel actions 1, 2, 5, and 85. If the appellant nonfrivolously alleged that any of the decisionmakers involved with these personnel actions had either actual or constructive knowledge of her August 22, 2014 disclosure, then she has satisfied her burden at this stage.[6] *See Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (finding that the Board has jurisdiction when an appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one whistleblowing disclosure).

Under penalty of perjury, the appellant asserted below that G.H., L.D., L.L., and D.R. "knew that A2LA conducted a for-cause audit in 2014 for the purpose of investigating a complaint . . . that could only have come from 1 source." IAF, Tab 14 at 5. The appellant added that M.P. and L.D. "were both directly involved in leading NRL's reaccreditation activities, [and] were directly privy to her identity as whistleblower as a result of subsequent information derived from A2LA representatives and/or the extensive internal investigation conducted." *Id.* She further asserted that G.H., L.L., and D.R., who "all participated directly in NRL's reaccreditation activities," "were informed by involved executive managers of (or inferred) [her] identity as a whistleblower."

---

[5] Some of the appellant's personnel actions involve events that occurred over a period of time, such as, in personnel action 1, exclusion from work assignments from February 2016 to February 23, 2017, and no work assignments in February and March 2017. IAF, Tab 14 at 5. Similarly, in personnel action 85, the appellant alleged that, after her October 2015 reassignment "and through the present," management downgraded her position description, title, and organizational roles. W-2 AF, Tab 8 at 8. To the extent that these events occurred outside the 2-year knowledge/timing window, they nevertheless represent a continuum of related actions for purposes of contributing factor. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 648, ¶ 22 (2013).

[6] The appellant did not allege any claim involving constructive knowledge of the disclosure.

*Id.* at 5-6. Additionally, the appellant asserted that she "received feedback" that her "known or presumed identity as [a] whistleblower" was "widely disseminated."[7] *Id.* at 6. As further support for this contention, the appellant states on review that some ORA officials knew her to be the source of the disclosure to A2LA based on her history of raising similar objections within the agency, the specific issues and staff investigated, and her direct communication with accreditation organization representatives.[8] PFR File, Tab 1 at 10; W-2 AF, Tab 19 at 5-10.

The appellant stated under penalty of perjury that one or more of these named individuals took or was notified of personnel actions 1-2, 5, and 85. IAF, Tab 14 at 5-9; W-2 AF, Tab 8 at 8. The knowledge issue presents a close call. However, at this stage, the appellant's burden to make nonfrivolous allegations does not require precision. *See, e.g.*, *Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1374 (Fed. Cir. 2016) (holding that, although the appellant did not identify which management officials or other attendees were present at the meeting in which he made the whistleblowing disclosure, "when read with an eye on likely inferences appropriate to the context, [his] allegations are sufficiently specific and plausible to constitute nonfrivolous assertions that at least one, and perhaps three, of the officials charged with the personnel actions at issue attended the [] meeting or at least knew what [the appellant] disclosed there"); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (finding that the

---

[7] The appellant did not allege a claim of reprisal for perceived whistleblowing disclosures.

[8] In finding that the appellant failed to nonfrivolously allege that any decisionmaker had knowledge of her disclosure to A2LA, the administrative judge noted that she asked A2LA not to be named and her work email not to be used. ID at 10. However, the reasons A2LA gave for suspending NRL's accreditation could have had the effect of outing the appellant as the whistleblower if only she could have provided it with those reasons. *See, e.g.*, *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010) (acknowledging the administrative judge's finding that, even if a disclosure was made anonymously, the nature of the disclosure may make it evident that the disclosure could only have come from the appellant).

appellant made a nonfrivolous allegation of knowledge under the knowledge/timing test because he alleged that the Chief of Staff used his influence within the agency to cause the Office of General Counsel to take the personnel actions against him, which the Board construed as an allegation that the agency decisionmakers either knew of the disclosure via the Chief of Staff or were influenced by him). Moreover, any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016). Accordingly, we find that the appellant made a nonfrivolous allegation that one or more individuals who took or influenced personnel actions 1-2, 5, and 85 knew of her A2LA disclosure. Thus, we find that the appellant has nonfrivolously alleged that her disclosure to A2LA was a contributing factor in personnel actions 1-2, 5, and 85. She has therefore established that the Board has jurisdiction over these claims.

We further find that the Board has jurisdiction over some of the appellant's remaining allegations of reprisal for whistleblowing disclosures.

In addition to the August 22, 2014 A2LA disclosure discussed above, the appellant identified numerous other disclosures and activity below.[9] W-2 AF, Tab 1 at 9-11, Tab 8 at 24-26, Tab 11 at 4-5, Tab 12 at 5-6. The administrative judge did not address any of these other disclosures or activity in the initial

---

[9] There are discrepancies in how the appellant identified and categorized her disclosures. *Compare* W-2 AF, Tab 1 at 9-11, *with* W-2 AF, Tab 8 at 24-26. There also appears to be some overlap between the disclosures. For the purposes of our analysis, we have included the broadest reading of her disclosures. For uniformity in this order, we have numbered the appellant's disclosures as follows: disclosure 1 is the A2LA email, W-2 AF, Tab 1 at 9 (identified as disclosure (a) therein); disclosures 2-18 are found in W-2 AF, Tab 1 at 9-11 (labeled by the appellant as disclosures (b)-(r) therein); disclosure 19 is the refiled W-2 appeal, W-2 AF, Tab 8 at 26 (which the appellant listed as disclosure 7 therein); disclosure 20 comprises the appellant's equal employment opportunity complaints, W-2 AF, Tab 11 at 4-5 (which the appellant listed as disclosure 8 therein); and disclosure 21 is her February 25, 2019 email found at W-2 AF, Tab 12 at 5-6 (which the appellant listed as disclosure 9 therein).

decision, and the appellant raises this claim of error on review. We agree with the appellant, and we now address her other disclosures and activity.

*Administrative exhaustion*

The Board has jurisdiction over an IRA appeal if, inter alia, an appellant exhausts her administrative remedies before OSC. *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 12 (2016). The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The Board's jurisdiction is limited to those issues that previously have been raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint, evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and their written responses to OSC referencing the amended allegations. Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id.*, ¶ 11.

To evaluate exhaustion, we have reviewed the appellant's two OSC complaints in MA-18-2621 and MA-18-5547, her supplements thereto, and the two OSC close-out letters. *E.g.*, IAF, Tab 4 at 13-14, Tab 6; W-2 AF, Tab 4 at 9-18, Tab 9 at 7-8. Based upon our review of these documents, we find that she exhausted with OSC the disclosures numbered 2-6, 11-18, and 20.

Conversely, we find that she did not exhaust with OSC disclosures 7-10, 19, 21, and portions of disclosure 4. For example, we find that the appellant failed to exhaust with OSC such activity as her two OSC complaints (OSC Docket Nos. MA-18-2621 and MA-18-5547) and the instant Board appeals (disclosures 7, 9, 10, 19). We also find that her February 12, 2019, and February 19, 2019 disclosures (part of disclosure 4) and her February 25, 2019 disclosure (disclosure

21), were dated after OSC issued its second, February 7, 2019 close-out letter and could not have been exhausted with OSC. Additionally, the appellant asserted that she made numerous disclosures to G.H. himself from May to December 2018 (disclosure 8); however, none of her correspondence to OSC or OSC's responses to her during and after this time frame included such an allegation.

*Whistleblowing disclosures/protected activity*

Having determined that the appellant proved OSC exhaustion with regard to disclosures 2-6, 11-18, and 20, we must next consider whether the appellant has nonfrivolously alleged that she made whistleblowing disclosures in these communications. *Salerno*, 123 M.S.P.R. 230, ¶ 5. A nonfrivolous allegation of a whistleblowing disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Id.*, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*

We find that the appellant has made nonfrivolous allegations that some of her disclosures were protected. For example, the appellant's September 6, 2016 email to L.D. (part of disclosure 2) stated, among other things, that she was not being given assignments in part due to her prior "MSPB complaints," W-2 AF, Tab 1 at 9, Tab 8 at 36. We find that this email constitutes a nonfrivolous allegation of a violation of law. Also, the appellant's October 30, 2018 email to M.P. and E.M. (part of disclosure 4), titled "Confidential Whistleblowing Notification," stated, among other things, that G.H. approved audit module software scope contracts but "omit[ed] the requirement that [the vendor] fix all of

the critical and major issues identified in last year's failed audit module deployment project." W-2 AF, Tab 8 at 49. We find that the appellant nonfrivolously alleged that she disclosed an abuse of authority in this email. *See, e.g.*, *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 18 (2008) (noting that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to herself or preferred other persons). Similarly, the appellant's November 27, 2018 email to M.P. and E.M., among others (identified in disclosure 4), stated that "as a result of [her] whistleblowing and [equal employment opportunity (EEO)] complaint notifications" to them over the past few years and the agency's failure to take any corrective action, "management's hostile retaliation has escalated further both inside and outside of the workplace." W-2 AF, Tab 1 at 9, Tab 8 at 50. She asserted that G.H. and others improperly denied sick leave requests and "maliciously sabotaged" her car, which resulted in "catastrophic damage." W-2 AF, Tab 8 at 50. We find that the appellant made a nonfrivolous allegation that this disclosure involved an abuse of authority and a violation of law (destruction of property). *See, e.g.*, *DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999) (explaining that some allegations of wrongdoing, such as theft of Government property or fraudulent claims for pay, so obviously implicate a violation of law, rule, or regulation that an appellant need not identify any specific law, rule, or regulation that was violated).

The appellant also made a number of other disclosures involving allegations of unlawful instructions, improper denial of sick leave, and "fraudulent" absence without leave (AWOL) charges, which we find are nonfrivolous allegations of a violation of law, rule, or regulation, or an abuse of authority. For example, in her December 17, 2018 email to E.M., M.P., L.L., and others (referenced in disclosures 4 and 17), the appellant stated her belief that the termination of her telework agreement and instruction to report to a duty station

100 miles away were unlawful, and the AWOL charges against her were "fraudulent." W-2 AF, Tab 1 at 11, Tab 8 at 26, 66. Although she did not identify where in the record we could find the November 21, 2018 email to L.L., E.M., and M.P. (disclosure 13), W-2 AF, Tab 1 at 10, we believe that she was describing the email at W-2 AF, Tab 8 at 55, which included similar allegations.[10]

We further find that two of the emails identified in disclosure 3 were communications to the agency's Office of Equal Employment Opportunity, dated December 1, 2018, and January 28, 2019, and that she has made a nonfrivolous allegation that these are protected under 5 U.S.C. § 2302(b)(9)(C). *See Holman v. Department of the Army*, 2025 MSPB 2, ¶ 13; W-2 AF, Tab 8 at 25-26, 57, 70-71. The remainder of the emails identified in disclosure 3 pertained to other incidents of alleged discrimination and retaliation for EEO activity. W-2 AF, Tab 8 at 38, 43-45, 57, 70-74. Such allegations, which were not directed to the Office of Equal Employment Opportunity or any other entity responsible for internal investigation or review, do not constitute nonfrivolous allegations of whistleblowing disclosures. *See, e.g.*, *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 18-23 (finding that disclosures of alleged Title VII violations are not protected under 5 U.S.C. § 2302(b)(8)).

As for the appellant's remaining disclosures, we find that some of her descriptions of the disclosures are too vague to find protected even under the nonfrivolous allegation standard. *See, e.g.*, *Salerno*, 123 M.S.P.R. 230, ¶ 6 (finding that, in order to be protected, the appellant's disclosures must be specific and detailed, not vague allegations of wrongdoing). For example, in disclosure 3, she stated that from June to October 2017, she made "whistleblowing disclosures"

---

[10] The appellant alleged in disclosure 17 that she made similar disclosures to other managers in a December 10, 2018 email. W-2 AF, Tab 1 at 11. However, she did not reference this email at W-2 AF, Tab 8 at 25-26, and she did not identify the location of this communication in the record or explain to whom the disclosure was made. Because the content of this disclosure appears duplicative of the disclosures of wrongdoing in the November 21, 2018, and December 17, 2018 emails, which we find protected herein, we do not address the December 10, 2018 email further.

to E.A., and in disclosure 5, she stated that from January to March 2018, she made "whistleblowing disclosures" to B.C., W-2 AF, Tab 1 at 9, but she did not offer any explanation of the nature of the disclosures or include any citations to where these communications could be found in the record. Also, in disclosure 12, the appellant stated that on November 14, 2018, she disclosed "that [an EEO] representative refused to receive ongoing claims and initiate a new complaint." *Id.* at 10. She does not, however, identify to whom the disclosure was made or the category of disclosure under 5 U.S.C. § 2302(b)(8), nor does she offer a citation for where this communication can be found in the record. The Board is not required to pore through the record in order to construe or make sense of pleadings filed by a party. *Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002). For these reasons, we find that the appellant has not made nonfrivolous allegations that these disclosures were protected. *See, e.g., Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 8 (2000) (stating that an appellant's submissions that lack clarity run the risk of being found to have failed to meet the requisite burden of proof).

Finally, we have considered the appellant's description of the remaining disclosures, but we find that she has failed to make a nonfrivolous allegation that any of them constitute whistleblowing disclosures. For instance, the March 30, 2017 email described in disclosure 2 "[brought] to [L.D.'s] attention the continued lack of work assignments by management" during that month. W-2 AF, Tab 1 at 9, Tab 8 at 37. Additionally, an August 28, 2018 email alluded to in disclosure 4 advised M.P. and E.M. that "further events of discrimination/reprisal, which were previously reported to your attention without corrective, preventive effect, have been reported to OSC." W-2 AF, Tab 1 at 9, Tab 8 at 25, 48. In her December 4, 2018 email described in disclosures 4 and 15, the appellant carbon copied E.M., M.P., and G.H. on an email to her then supervisor, L.L., asking why her telework agreement was terminated and explaining that she could not report to the office because she lives too far away

from the facility. W-2 AF, Tab 1 at 9-10, Tab 8 at 25, 58-59. Her December 5, 2018 email to E.M., M.P., G.H., and "[EEO] management," identified in disclosures 4 and 16, "advise[d]" these officials that she requested to rescind the "fraudulent and retaliatory supervisory action," i.e., the termination of her telework agreement. W-2 AF, Tab 1 at 9-10, Tab 8 at 25-26, 60-65.

Disclosure 14 requires additional discussion but ultimately does not warrant a different outcome. There, the appellant alleged that, on November 27, 2018, and December 1, 2018, she disclosed that "management is proposing hiring additional unit positions while denying qualified staff [(herself)] work for [approximately] 75% of [the] time for the past year (plus) and ongoing."[11] W-2 AF, Tab 1 at 10, Tab 8 at 25-26. Even if we considered the appellant's substantive allegations, we would find that she did not make a nonfrivolous allegation that she disclosed any of the categories described in 5 U.S.C. § 2302(b)(8). For example, her disclosure does not appear to implicate a specific and substantial danger to public safety, nor does it constitute a reasonable belief of a gross waste of funds or gross mismanagement. *See, e.g., Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994) (finding that a gross waste of funds constitutes a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government); *White v. Department of the Air Force*, 63 M.S.P.R. 90, 95 (1994) (holding that gross mismanagement means a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission). We have considered whether her disclosure concerns a violation of law, rule, or regulation or an abuse of authority. In the

_____

[11] The appellant does not identify to whom these disclosures were made or where in the record these disclosures can be found. We have reviewed the December 1, 2018 email discussed above, W-2 AF, Tab 8 at 57, which describes the same content, but it would not be protected because she was making the disclosure to add more claims to her EEO complaint, which does not involve reprisal for whistleblowing. We have considered the appellant's November 27, 2018 email discussed above, W-2 AF, Tab 8 at 50, but this email does not raise these issues.

absence of any contextual information, such as whether the agency's proposed hiring decisions would not be based on merit, her bare assertion regarding the agency's proposal does not support a nonfrivolous allegation of a reasonable belief of a violation of law, rule, or regulation or an abuse of authority. *Cf. Schaeffer v. Department of the Navy*, 86 M.S.P.R. 606, ¶¶ 9-10 (2000) (noting that the appellant made a nonfrivolous allegation that he disclosed a violation of law and an abuse of authority regarding personnel selections being made without regard to merit), *overruled on other grounds by Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583 (2010), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677 (2014).

*Contributing factor*

Having determined that the appellant made a nonfrivolous allegation of whistleblowing disclosures in her September 6, 2016, October 30, 2018, November 21, 2018, November 27, 2018, and December 17, 2018 communications, we must now determine whether she made a nonfrivolous allegation that one or more of these communications was a contributing factor in the agency's decision to take one or more of the remaining personnel actions against her.

The appellant's September 6, 2016 disclosure was made to L.D., W-2 AF, Tab 8 at 36, and she asserted below that L.D. was notified of or took personnel actions 1-2 and 4-5, IAF, Tab 14 at 5-9. We find that the appellant has nonfrivolously alleged that her September 6, 2016 disclosure was a contributing factor in personnel actions 1-2 and 4-5.

Personnel actions 1-2, 4-5, 33, 39, 72, 77, 82, 86, and 88 occurred before the October 30, 2018 disclosure, and thus, the October 30, 2018, November 21, 2018, November 27, 2018, and December 17, 2018 disclosures could not have been contributing factors in these personnel actions. IAF, Tab 14 at 5-9, 32-33, 37-38, 57-58, 64-65, 68; W-2 AF, Tab 8 at 5-6, 8-16, 18-21; *see, e.g.*, *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 29 (2011) (noting that,

because the alleged personnel actions predated the taxi fare disclosure, the appellant failed to nonfrivolously allege that the taxi fare disclosure contributed to them). Therefore, we will no longer consider personnel actions 1-2, 4-5, 33, 39, 72, 77, 82, 86, and 88 in our analysis of contributing factor.[12]

The appellant's October 30, 2018 disclosure was made to M.P. and E.M. W-2 AF, Tab 8 at 49. The appellant asserted below that one or both of these individuals took or were notified about personnel actions 63, 85, 87, 89-95, 98, and 100-01. *E.g.*, IAF, Tab 14 at 57-58; W-2 AF, Tab 8 at 8-15, 18-22. We therefore find that she made a nonfrivolous allegation that this disclosure was a contributing factor in these personnel actions that occurred within 2 years of this disclosure.

The appellant's November 21, 2018 disclosure, which was made to L.L., E.M., M.P., and G.B., W-2 AF, Tab 8 at 55, postdated personnel actions 93 and 94, and could not have been a contributing factor in these personnel actions. The appellant alleged that one or more of these individuals took or were notified about personnel actions 63, 85, 87, 89-92, 95, 98, 100-01. IAF, Tab 14 at 57-58; W-2 AF, Tab 8 at 8-13, 15-16, 18-22, Tab 18 at 4. We therefore find that she made a nonfrivolous allegation that her November 21, 2018 disclosure was a contributing factor in the agency's decision to take these personnel actions, which occurred within 2 years of this disclosure.

Similarly, the appellant's November 27, 2018 disclosure, which was sent to M.P., E.M., and C.M., W-2 AF, Tab 8 at 50, postdated personnel actions 93-95 and could not have been a contributing factor in those actions. The appellant alleged that one or more of these individuals took or were notified about personnel actions 63, 85, 87, 89-92, 98, 100, and 101. IAF, Tab 14 at 57-58; W-2 AF, Tab 8 at 8-13, 18-20. We therefore find that she made a nonfrivolous

---

[12] We recognize that portions of personnel actions 63, 85, 87, and 89-92 occurred before October 30, 2018. *E.g.*, IAF, Tab 14 at 57-58; W-2 AF, Tab 8 at 8-9, 11-13. In our analysis, we will only focus on the portions of these personnel actions that occurred after the corresponding disclosures.

allegation that this disclosure was a contributing factor in the agency's decision to take personnel actions 63, 85, 87, 89-92, 98-100, and 101, which occurred within 2 years of the disclosure.

As far as the EEO activity described in disclosure 3 is concerned, the appellant's December 1, 2018 email was copied to C.M., E.M., and M.P. W-2 AF, Tab 8 at 57. The actions that postdated that email and which the appellant alleges that one or more of these officials influenced are personnel actions 98, 100, and 101. *Id.* at 18-21. The only personnel action postdating the appellant's January 28, 2019 email (with copies to C.M. and S.G.) was personnel action 101. *Id.* at 21-22, 70-71. We find that the appellant has made a nonfrivolous allegation of contributing factor in this regard.

Finally, her December 17, 2018 email, which was sent to E.M., M.P., G.B., L.L., and G.H., W-2 AF, Tab 8 at 66, predated personnel actions 93-95 and 98. She alleged that one or more of these individuals took or were notified about personnel actions 63, 85, 87, 89-92, 100-01. IAF, Tab 14 at 57-58; W-2 AF, Tab 8 at 8-13, 18-22, Tab 18 at 4. We find that she made a nonfrivolous allegation that this disclosure was a contributing factor in personnel actions 63, 85, 87, 89-92, 100-01, which occurred within 2 years of the disclosure.

Because we find that the appellant has satisfied her burden to make nonfrivolous allegations that the aforementioned disclosures were contributing factors in the enumerated personnel actions,[13] on remand, the administrative judge shall hold the requested hearing and shall adjudicate whether the appellant satisfied her burden of proving these assertions by preponderant evidence. If so, then the administrative judge shall evaluate whether the agency has proven by clear and convincing evidence that it would have taken the same personnel actions in the absence of the whistleblowing disclosures.

---

[13] Regarding any remaining personnel actions not specifically addressed in this section, we have considered the alternative method of proving contributing factor, *supra* note 4, but we find that the appellant has not met her burden to make nonfrivolous allegations of contributing factor under this alternative method.

Additionally, we vacate the administrative judge's finding in the initial decision that the appellant's allegations individually or collectively did not rise to the level of actionable harassment or a hostile work environment. ID at 12-13. In *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16, the Board analyzed the personnel action found at 5 U.S.C. § 2302(a)(2)(A)(xii), a "significant change in duties, responsibilities, or working conditions," and it held that to amount to a "significant change," an agency action must have a significant impact on the overall nature or quality of an employee's working conditions, responsibilities, or duties. The Board also emphasized in *Skarada* that it must consider such actions with a broad interpretation. *Id.*, ¶ 16.

As noted above, we have found that the appellant made nonfrivolous allegations that her whistleblowing disclosures were contributing factors in the agency's decision to take seventeen discrete personnel actions against her. We further find that the cumulative effect of these seventeen actions could constitute a significant change in her working conditions, responsibilities, or duties under 5 U.S.C. § 2302(a)(2)(A)(xii). The appellant is therefore entitled to a hearing on the merits of this claim, and we remand this claim to the administrative judge.

The appellant's remaining arguments are without merit.

The administrative judge found that, because the appellant appealed her removal as a separate action, it would not be considered in this IRA appeal. ID at 3. On review, the appellant argues that the administrative judge erred by not considering her removal as part of her IRA appeal and asserts that her appeals should have been joined. PFR File, Tab 1 at 5-6. Joinder of two or more appeals filed by the same appellant may be appropriate when it would expedite processing of the appeals and when it would not adversely affect the interests of the parties. 5 C.F.R. § 1201.36(b). Despite the fact that both appeals are pending on review, the appellant has failed to persuade us that joinder would expedite the processing of her appeals and not adversely affect the interests of the parties. We therefore

deny her request for joinder. To the extent that the appellant raises arguments regarding the removal action on review, we will not address them herein.

The appellant argues that the administrative judge failed to consider her January 27, 2019 stay request.[14] PFR File, Tab 1 at 7-8. The appellant requested that the Board stay personnel actions 95, 98, 100, and 101 (the latter of which she described at the time as "[a]ny further personnel action"). W-2 AF, Tab 1 at 4-5, 11-13. Contrary to the appellant's assertion on review, the administrative judge advised her, in an order granting her an extension of time to file a submission, that the regulation regarding a motion for a stay was at 5 C.F.R. § 1209.9. W-2 AF, Tab 7 at 1-2. It does not appear that the appellant filed another stay request in accordance with the administrative judge's instruction. Even if we construe the administrative judge's statement as a denial of her stay request, the appellant may not challenge that decision through the petition for review process; a request for interlocutory appeal is the only option. *Mason*, 116 M.S.P.R. 135, ¶ 30; *Mogyorossy v. Department of the Air Force*, 96 M.S.P.R. 652, ¶ 24 (2004). The appellant did not seek an interlocutory appeal below. Thus, on review, the Board will not consider her challenge to the administrative judge's handling of her stay request.

The appellant asserts that her disciplinary record from the 2012 to 2014 timeframe should have been expunged from the agency's records and that the administrative judge erred in referencing them. PFR File, Tab 1 at 8. The administrative judge referenced this disciplinary history in the background section of the initial decision. ID at 3. However, it is not clear how this argument relates to this IRA appeal. Because we are remanding the appeal, the administrative judge should, if appropriate, address this argument on remand.

---

[14] She also stated that the administrative judge failed to consider her March 21 and May 24 motions to schedule a settlement conference. PFR File, Tab 1 at 7-8. The motions identified by the appellant appear to have been filed in her removal appeal. 0108 IAF, Tabs 4, 21. We will address her argument regarding those motions in a separate order in that matter.

The appellant also argues that the administrative judge was biased. *Id.* at 6-9, 13. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Here, the appellant attributes the administrative judge's alleged adjudicatory errors to "inexplicable negligence or blatant bias." PFR File, Tab 1 at 13. However, an administrative judge's findings, even if erroneous, are insufficient in themselves to establish bias. *Myers v. Department of Agriculture*, 81 M.S.P.R. 496, ¶ 29 (1999). Even if an administrative judge's remarks are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, such remarks ordinarily do not support a bias claim. *Liteky*, 510 U.S. at 555. The appellant has failed to establish that the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Bieber*, 287 F.3d at 1362-63, and we therefore find her claim of bias to be without merit.

<u>We provide additional guidance to the administrative judge on remand.</u>

We have found herein that the appellant made nonfrivolous allegations that her August 22, 2014 A2LA disclosure and her September 6, 2016, October 30, 2018, November 21, 2018, November 27, 2018, December 1, 2018, December 17, 2018, and January 28, 2019 disclosures were whistleblowing disclosures that were a contributing factor in the personnel actions noted above. On remand, the administrative judge shall evaluate whether the appellant satisfied her burden by preponderant evidence; if so, the administrative judge shall proceed to evaluate

whether the agency proved by clear and convincing evidence that it would have taken the same personnel actions in the absence of her disclosures.

We find it appropriate to provide the administrative judge with additional guidance on remand. For example, if the appellant fails to satisfy the contributing factor knowledge/timing test, the administrative judge shall consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Rumsey*, 120 M.S.P.R. 259, ¶ 26.

Additionally, the appellant stated in her August 22, 2014 A2LA email that it was her "ethical responsibility as NRL [Quality Service Manager] to report quality issues" and that she did so through "established [a]gency channels without resolution." W-2 AF, Tab 8 at 29, 31. It is unclear if the appellant's disclosure to A2LA was made in the normal course of her duties; if so, the administrative judge shall determine whether the "extra proof requirement" applies at the merits stage, such that the appellant must prove by preponderant evidence that the agency took a personnel action because of the disclosure and did so with an improper, retaliatory motive. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶¶ 9-124.

**ORDER**

For the reasons discussed above, we remand this case to the Northeastern Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.