**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2025 MSPB 2**

Docket No. AT-1221-19-0410-W-1

**Kali Mary Holman,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

February 27, 2025

Kali Mary Holman, Phenix City, Alabama, pro se.

Nic Roberts, Fort Moore, Georgia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the appeal for further adjudication consistent with this Opinion and Order.  This Opinion and Order clarifies the extent to which an equal employment opportunity (EEO) complaint may constitute protected activity under 5 U.S.C. § 2302(b)(9)(C).

BACKGROUND

¶2     The appellant was a GS-07 Purchasing Agent for the agency, stationed in Fort Benning, Georgia.[1]  Initial Appeal File (IAF), Tab 1 at 1, Tab 6 at 4.  In early 2019, she filed two whistleblower complaints with the Office of Special Counsel (OSC)—one on February 4, 2019, and one on March 12, 2019.  IAF, Tab 1 at 14-22; Petition for Review (PFR) File, Tab 4 at 8-14.  OSC closed the first complaint without taking corrective action.  IAF, Tab 5 at 16.  The record does not show what action, if any, OSC took with respect to the second complaint.

¶3     On April 15, 2019, the appellant filed the instant IRA appeal and requested a hearing.  IAF, Tab 1.  The administrative judge issued an order, fully apprising the appellant of her burden of proving Board jurisdiction over an IRA appeal and notifying her of the specific information that she needed to provide to satisfy that burden.  IAF, Tab 3.  Both parties responded to the order.  IAF, Tabs 4-6.

¶4     After the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 7, Initial Decision (ID).  Specifically, the administrative judge found that the appellant's EEO activity was not protected under the Whistleblower Protection Act as amended.  ID at 3-4.

¶5     The appellant has filed a petition for review, disputing the administrative judge's jurisdictional analysis.  PFR File, Tab 2.  The appellant has also filed supplements to her petition for review, including, among other

---

[1] The events of this appeal took place prior to May 11, 2023, when Fort Benning was renamed "Fort Moore."  Media Release, U.S. Army Maneuver Center of Excellence, Fort Moore celebration set for May 11 (Mar. 8, 2023), https://www.moore.army.mil/MCOE/PAO/newsreleases/2023/20230308%20MEDIA%20RELEASE_Fort%20Moore%20Ceremony.pdf.  While recognizing the official name change, all of the documents in the record refer to the installation as "Fort Benning," and so to avoid confusion, we refer to the installation by its former name.

things, documentation of her correspondence with OSC.[2]  PFR File, Tabs 4-5. The agency has filed a response.  PFR File, Tab 7.

## ANALYSIS

¶6    As relevant here, the Board has jurisdiction over an IRA appeal if an appellant proves that she exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action outlined in 5 U.S.C. § 2302(a).  *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 12 (2016).  If an appellant proves Board jurisdiction over an IRA appeal, she is entitled to a hearing on the merits, if she requested one.  *Shope v. Department of the Navy*, 106 M.S.P.R. 590, ¶ 5 (2007).

Exhaustion

¶7    The substantive requirements for exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.  The Board's jurisdiction is limited to those issues that were previously raised with OSC.  *Id.*  However, an appellant may give a more detailed account of her whistleblowing activities before the Board than she did to OSC.  *Id.*  An appellant may demonstrate exhaustion through her initial OSC complaint; evidence that she

---

[2] Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence filed for the first time on petition for review absent a showing that it was previously unavailable despite the party's due diligence.  *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980).  However, considering the totality of the circumstances, including the nature of evidence proffered, the appellant's pro se status, and the issues presented in this appeal, we find that it is in the interest of justice to waive the regulatory requirement.  *See* 5 C.F.R. § 1201.12; *see, e.g.*, *Boechler v. Department of the Interior*, 109 M.S.P.R. 638, ¶ 8 (2008) (considering documentation submitted by the appellant for the first time on review in an IRA appeal when determining whether he exhausted administrative remedies with OSC), *aff'd*, 328 F. App'x 660 (Fed. Cir. 2009).

amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and any written responses to OSC referencing the amended allegations. *Id.*, ¶ 11. An appellant also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that she raised with OSC the substance of the facts in the Board appeal. *Id.* An appellant may file an IRA appeal with the Board if, after filing a request for corrective action with OSC, (1) OSC notifies her that it terminated its investigation of her request for corrective action and she then files an IRA appeal with the Board within 60 days of such notification; or (2) 120 days pass after the filing of a request for corrective action with OSC and OSC has not notified her of whether it will seek corrective action. 5 U.S.C. § 1214(a)(3)(A), (B).

¶8    As noted above, this appeal involves two separate whistleblower complaints that the appellant filed with OSC. *Supra* ¶ 2. In her first whistleblower reprisal complaint, the appellant informed OSC that she filed an EEO complaint on November 14, 2018, in which she alleged discrimination based on race and sex. PFR File, Tab 4 at 13-14. She further informed OSC that, in the following months, agency management subjected her to "several verbal threats of termination, letters of caution, leave restriction and tour of duty schedule change and nasty gram emails with screaming from leadership in my cubicle." *Id.* at 12-13. On March 7, 2019, OSC notified the appellant that it would not be seeking corrective action on that complaint. IAF, Tab 5 at 16. Based on these facts, we find that the appellant exhausted her administrative remedies with respect to claims that the agency threatened to remove her and subjected her to a significant change in working conditions in retaliation for her EEO complaint.[3]

---

[3] A threatened removal is a covered personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii). *See Grubb v. Department of the Interior*, 96 M.S.P.R. 361, ¶ 25 (2004). The rest of these alleged retaliatory acts are not separately enumerated in that paragraph as covered "personnel actions." However, taken together, they could contribute to a finding that the agency subjected the appellant to a significant change in

¶9      In her second whistleblower reprisal complaint, the appellant alleged that, also in retaliation for her EEO complaint, the Fort Benning Civilian Personnel Advisory Center (CPAC) was obstructing her right to compete for various positions to which she had applied.  IAF, Tab 1 at 17-21.  There is no evidence that OSC ever closed its investigation into this complaint, and the appellant filed this appeal before 120 days had passed.  IAF, Tab 1 at 14-22.  Nevertheless, because 120 days have passed as of the date of this Opinion and Order, the requirements of 5 U.S.C. § 1214(a)(3) are now satisfied.  *See Jundt v. Department of Veterans Affairs*, 113 M.S.P.R. 688, ¶ 7 (2010).  We therefore find that the appellant exhausted her administrative remedies with respect to a claim that the agency failed to select her for various positions in retaliation for her EEO complaint.  *See* 5 U.S.C. § 2302(a)(2)(A)(i) (listing "an appointment" as a covered personnel action).

Protected Activity

¶10      The U.S. Court of Appeals for the Federal Circuit has long held that an EEO complaint disclosing violations of antidiscrimination statutes does not constitute protected activity under 5 U.S.C. § 2302(b)(8).  *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020); *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 690-91 (Fed. Cir. 1992).  Nor did the expanded scope of whistleblower protections provided by the Whistleblower Protection Enhancement Act of 2012 serve to place such disclosures within the ambit of section 2302(b)(8).  *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 21-22.  We therefore find that the appellant's EEO complaint did not constitute a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶11      We have also considered whether the appellant's EEO activity may have been protected under 5 U.S.C. § 2302(b)(9)(A)(i), which prohibits retaliation because of "the exercise of any appeal, complaint, or grievance

working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii).  *See generally Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 14-16.

right . . . with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]." However, there is no copy of the EEO complaint in the record, and the only evidence of the contents of that complaint is an EEO counselor's report dated November 1, 2018, and the description of the complaint in the appellant's correspondence with OSC. IAF, Tab 5 at 10; PFR File, Tab 4 at 13. These documents show that the appellant's EEO complaint regarded remedying violations of Title VII—not section 2302(b)(8). For this reason, we find that the appellant's EEO activity was not protected under 5 U.S.C. § 2302(b)(9)(A)(i). *See Abutalib v. Merit Systems Protection Board*, 127 F.4th 373, 378-79 (Fed. Cir. 2025).

¶12 Nevertheless, for the following reasons, we find that the appellant made a nonfrivolous allegation that her EEO activity was protected under 5 U.S.C. § 2302(b)(9)(C).[4] Under section 2302(b)(9)(C), it is a prohibited personnel practice to take a personnel action against an employee in reprisal for "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." Although the appellant's EEO activity concerned alleged violations of Title VII, the subject matter of the appellant's activity does not serve to exclude it from the protections of section 2302(b)(9)(C), which, unlike section 2302(b)(8), is devoid of explicit content-based limitations. *See Reese v. Department of the Navy*, 2025 MSPB 1, ¶ 46.

¶13 All that is left to determine is whether the agency's Office of Equal Opportunity is a "component responsible for internal investigation or review." *See id.*, ¶ 48. The Board has held that, "[i]n general, such components will have a

---

[4] The appellant does not argue, and we have not seriously considered, whether her EEO activity was protected under 5 U.S.C. § 2302(b)(9)(B) or (D) because those subparagraphs are inapplicable to this situation on their face. The appellant is not alleging that she assisted in another individual's appeal, complaint, or grievance or that she refused to obey an order.

degree of independence and objectivity, as well as the authority to investigate or review by taking testimony, collecting evidence, and making findings and recommendations." *Id.*, ¶ 50. We find that the agency's Office of Equal Opportunity fits this description. According to the Army Regulation in effect during the relevant time period, "EEO officials independently operate within the command." Army Regulation 690-12, Equal Employment Opportunity and Diversity, ch. 8-1a.(5) (Dec 12, 2019).[5] Likewise, Army Regulation 690-600, Equal Employment Opportunity Discrimination Complaints, ch. 1-4d. (Feb. 9, 2004), states that "[c]omplaints will be processed promptly and impartially." This same regulation goes on to describe in detail the authority of EEO officials to investigate claims by gathering evidence, including testimony and documentary evidence, and issue final agency decisions on such claims. *Id.*, ch. 4, 5. These Army regulations are consistent with the Equal Employment Opportunity Commission's regulations, requiring each agency to establish an EEO office that will provide for impartial investigations and complaint processing, with broad investigatory authority and authority to issue final decisions. 29 C.F.R. §§ 1614.102(a)(2), (b)(4), 1614.106(e)(2), 1614.108(b). These powers and functions of EEO offices are further detailed in Equal Employment Opportunity Commission Management Directive 110 (Nov. 9, 1999). In light of these powers, functions, and characteristics, we find that the agency's Office of Equal Opportunity is a component responsible for internal investigation or review. *See Reese*, 2025 MSPB 1, ¶ 52. Therefore, the appellant has made a nonfrivolous allegation that she engaged in activity protected under 5 U.S.C. § 2302(b)(9)(C) on November 1, 2018, when she spoke with an EEO counselor, and on

---

[5] This provision remains unchanged in the most recent revision of this regulation. Army Regulation 690-12, Civilian Equal Employment Opportunity Program (Feb. 6, 2025).

November 14, 2018, when she filed an EEO complaint.[6]  IAF, Tab 5 at 10; PFR File, Tab 4 at 14.

<u>Contributing Factor</u>

¶14  The most common way of establishing contributing factor, and the one most germane to the jurisdictional record in this case, is the knowledge/timing test of 5 U.S.C. § 1221(e).  *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 19 (2008).  Under the knowledge/timing test, an appellant can prove that her disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*

¶15  As set forth above, the appellant has nonfrivolously alleged that the agency took several personnel actions against her in retaliation for her EEO activity:  (1) a threatened removal; (2) a significant change in working conditions; and (3) numerous nonselections for appointment.[7]  *Supra* ¶¶ 8-9.  The

---

[6] We acknowledge that the appellant's engagement with the EEO office might also constitute activity protected under 5 U.S.C. § 2302(b)(9)(A)(ii).  However, notwithstanding certain dicta in *McCray v. Department of the Army*, 2023 MSPB 10, ¶¶ 27-30, we find that this would not prevent coverage under section 2302(b)(9)(C).  In this regard, we take notice of the amicus brief that OSC filed in *Reese v. Department of the Department of the Navy*, MSPB Docket No. DC-1221-21-0203-W-1, Petition for Review File, Tab 18 at 16-17, and we find it persuasive on this point.  We agree with OSC that subparagraphs (b)(9)(A) and (C) do not overlap completely.  For instance, a Board appeal is an "appeal" within the meaning of subparagraph (A), but the Merit Systems Protection Board is not a "component responsible for internal investigation or review" within the meaning of subparagraph (C).  Conversely, a disclosure to OSC would be covered under subparagraph (C), but it is not an "appeal, complaint, or grievance" within the meaning of subparagraph (A).  For the reasons stated in *McCray*, 2023 MSPB 10, ¶ 27, the Board would hesitate to interpret one of these subparagraphs as completely subsuming the other, but we have not interpreted them thus.  A partial overlap between the two subparagraphs does not render either of them inoperative or superfluous.

[7] The appellant has filed documentation showing that the agency proposed to suspend her on April 8, 2019, and that the deciding official sustained the proposal on May 3,

record shows that the Installation Division Chief was aware of the appellant's discussion with the EEO Counselor, IAF, Tab 5 at 8-9, and the appellant has alleged that officials at the Fort Benning CPAC were aware of her protected activity because they work in the same building that she does, IAF, Tab 1 at 17. Although these allegations are based partially on conjecture, at least at the jurisdictional stage, we find that they amount to a nonfrivolous allegation that officials in her supervisory chain and in the Fort Benning CPAC became aware of the appellant's EEO activity around the time that it happened. *See Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1375 (Fed. Cir. 2016) (stating that, when determining whether an appellant has made a nonfrivolous allegation of contributing factor, the allegations should be "read with an eye on likely inferences appropriate to the context"); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016) ("Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction.").

¶16　As for timing, the appellant alleged that the threatened removal and the various matters that might constitute a significant change in working conditions happened shortly after she filed her EEO complaint. PFR File, Tab 4 at 12. The documentary evidence of record corroborates this at least in part. PFR File, Tab 4 at 32-36. To the extent that the appellant has not given precise dates for some of the claimed retaliatory actions, we nevertheless find that they must have occurred, if at all, before she filed the February 4, 2019 OSC complaint in which she described them. This period of no more than a few months is sufficient to satisfy the timing component of the knowledge/timing test. *See Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 16 (2011) (holding that personnel actions taken within 1 or 2 years of the protected activity

_____

2019. PFR File, Tab 4 at 24-29. However, we agree with the administrative judge that neither the suspension proposal nor the suspension decision is properly before the Board in the context of this IRA appeal because there is no evidence that the appellant ever raised the matter with OSC. ID at 3 n.1.

will generally satisfy the timing component). We therefore find that the appellant has made a nonfrivolous allegation that her protected activity was a contributing factor in a threatened removal and in a significant change in working conditions.[8]

¶17    As for the nonselections for appointment, the appellant has listed no fewer than 60 positions for which she alleges she applied but was not selected. IAF, Tab 1 at 18-19. For jurisdictional purposes, we find sufficient the appellant's allegation that officials at the Fort Benning CPAC who were aware of her EEO complaint had a hand in those nonselections. However, the appellant has, for the most part, not explained when those nonselections occurred, and in fact, she states that the nonselections began in May 2017—well before she engaged in the EEO activity at issue. *Id.* Because protected activity cannot be a contributing factor in a personnel action that already occurred in the past, *Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶ 12 (2000), we find that the appellant has not made a nonfrivolous allegation of contributing factor for any of the nonselections for which she has not given specific dates. However, the appellant has given the requisite information for one nonselection—a nonselection for an Office Support Assistant position, to which she applied in December 2018, and for which she was not selected in January 2019. IAF, Tab 1 at 19. Again, this timing is sufficient to satisfy the timing element of the knowledge/timing test, and we find that the appellant has made a nonfrivolous allegation of contributing factor as to this specific nonselection only.

¶18    For the reasons explained above, we find that the appellant has established IRA jurisdiction over her appeal. She has made a nonfrivolous

---

[8] We find that the appellant's allegations of the agency's treatment of her, taken as true, could amount to a "significant change in working conditions" within the meaning of 5 U.S.C. § 2302(a)(2)(A)(xii). PFR File, Tab 4 at 12; *see Skarada*, 2022 MSPB 17, ¶ 18. However, after she filed the instant IRA appeal, the appellant filed another appeal under 5 U.S.C. chapter 75, raising some of these same issues. *Holman v. Department of the Army*, MSPB Docket No. AT-0752-19-0608-I-2. On remand, the administrative judge should consider the extent to which the appellant's chapter 75 appeal may have preclusive effect.

allegation that the agency threatened to remove her, subjected her to a significant change in working conditions, and declined to select her for an Office Support Assistant position in retaliation for activity protected under 5 U.S.C. § 2302(b)(9)(C).

ORDER

¶19    We remand this appeal to the regional office for adjudication of the merits.


_____

Gina K. Grippando
Clerk of the Board
Washington, D.C.