**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

EDDIE KING,

            Appellant,

      v.

SMALL BUSINESS
    ADMINISTRATION,

           Agency.

DOCKET NUMBER
AT-0432-24-0431-I-1

DATE: February 26, 2026

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Eddie King</u>, Baton Rouge, Louisiana, pro se.

<u>Claudine Landry</u>, Esquire, <u>Andrew D. Howell</u>, Esquire, and <u>Bryan Upshur</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed his performance-based removal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

Effective June 21, 2022, the appellant was hired as a GS-13 Size Specialist in the agency's Office of Government Contracting and Business Development, in Atlanta, Georgia. Initial Appeal File (IAF), Tab 1 at 16-17. The appellant's primary duty in this position was to evaluate the size status of small businesses in response to protest bids. IAF, Tab 5 at 477-82. The business-size determinations were ultimately used to provide benefits to small businesses in the Federal procurement process. *Id.* at 477. In making these size determinations, the appellant was tasked with gathering information about the target companies in coordination with other offices within the agency and preparing legally defensible size determinations that were suitable to withstand further appeal and review. *Id.* The appellant's fiscal year (FY) 2023 performance plan included three critical elements, (1) customer satisfaction, (2) conducting size determinations, and (3) written materials. *Id.* at 488-99. The appellant's performance was rated on a 5-tiered rating system based on the following ratings levels: Outstanding, Exceeds Expectations, Meets Expectations, Marginal, and Unacceptable. *Id.* at 488, 490-91.

By memorandum dated July 27, 2023, the agency notified the appellant that his performance was unacceptable in all three critical elements of his position, identified specific deficiencies within each critical element, and informed the appellant that he was being placed on a 90-day performance improvement plan (PIP) for the period from July 31 through October 31, 2023, during which he would be provided with the opportunity to raise his performance to at least the minimally acceptable, or "Marginal Level 2," performance level for all three critical elements. *Id.* at 369-71.

By memorandum dated November 1, 2023, the appellant's first-line supervisor informed the appellant that he had failed to perform the duties and responsibilities of his position at Level 2/minimally acceptable level during the PIP period, and therefore the supervisor was "tak[ing] appropriate steps to remove" the appellant from his position. *Id.* at 122, 134. Attached to the notice was a narrative log providing examples of the appellant's unacceptable performance during the PIP period. *Id.* at 124-32. By letter dated January 10, 2024, the agency proposed the appellant's removal from Federal service under chapter 43 based on his unacceptable performance. *Id.* at 115-19. After considering the appellant's written response to the proposal, *id.* at 83-112, the deciding official sustained the decision, removing the appellant from Federal service, effective February 28, 2024, *id.* at 79-80. The appellant timely filed a Board appeal of the removal decision and raised affirmative defenses of discrimination based on disability, race, and age; reprisal for prior equal employment opportunity (EEO) activity; and retaliation for protected whistleblowing activity. IAF, Tab 1 at 1-11, Tab 19 at 2.

After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming the removal action. IAF, Tab 26, Initial Decision (ID) at 1, 29. Specifically, the administrative judge found that the agency proved each of the following elements of the chapter 43 action by substantial evidence: the Office of Personnel Management (OPM) approved the agency's performance management system; the appellant's performance standards were communicated to him and were valid; the agency gave the appellant a reasonable opportunity to improve his performance during the PIP period; and the appellant's performance in each of the three critical elements was unacceptable during the PIP. ID at 2-5, 8-11. The administrative judge further concluded that the agency proved that the appellant's placement on the PIP was "justified," meaning that it proved that the appellant's pre-PIP performance was unacceptable. ID at 3, 5-8 (citing *Santos v. National Aeronautics and Space*

*Administration*, 990 F.3d 1355, 1360-63 (Fed. Cir. 2021)); *see Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 14. Finally, the administrative judge concluded that the appellant failed to prove his discrimination and retaliation affirmative defenses. ID at 11-24. Having determined that the agency met its burden of proving all of the required elements to support its performance-based action and that the appellant failed to meet his burden of proving any of his affirmative defenses, the administrative judge affirmed the removal action. ID at 24-25.

The appellant has timely filed a petition for review of the initial decision. Petition for Review (PFR) File, Tabs 2-4. The agency has filed a response to the petition for review. PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant argues that the administrative judge erred by finding that the agency's performance appraisal system was approved by OPM, arguing that the approval document the agency produced is "altered" and over 30 years old and no longer accurately reflects the agency's performance appraisal system. PFR File, Tab 4 at 5, 8, 16-18, 31. He also argues that his performance was "outstanding" and that the administrative judge ignored positive aspects of his job performance, and he identifies accomplishments and commendations that he received for completing his job duties. *Id.* at 12-13, 20-21. He argues that this positive evidence of his accomplishments contradicts the agency's "fake, bogus, and fraudulent performance ratings, [sic] and PIPs" and that the administrative judge erred by disregarding his record of positive achievements in favor of the agency's evidence. *Id.* at 16, 21, 25-27. The appellant also challenges some of the administrative judge's findings on his affirmative defenses. *Id.* at 4-32. Specifically, he argues that the administrative judge failed to consider that he was replaced by a younger employee in connection with his age discrimination claim, failed to consider the fact that his pre-EEO activity

performance reviews were positive in considering his EEO reprisal claim, and improperly discounted his whistleblower retaliation claim. *Id.* Finally, the appellant argues that the administrative judge and the agency mistreated and failed to respect him during the hearing, and further, that the administrative judge failed to accommodate his physical limitations during the hearing. *Id.*

<u>The agency proved the performance-based removal action by substantial evidence.</u>

In an appeal of an agency action taken under chapter 43, an agency must prove by substantial evidence that: (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. *Lee*, 2022 MSPB 11, ¶ 15.

The administrative judge determined that the agency met its burden to prove its unacceptable performance charge. ID at 2-11, 24. Aside from disputing OPM's approval of the agency's performance system and generally arguing that his performance was "outstanding," the appellant has not challenged the administrative judge's findings in this regard on review. Nevertheless, we will briefly address the foregoing elements.

Regarding the first element, as previously noted, the administrative judge concluded that the agency established that OPM had approved its performance appraisal system, citing testimony from an agency Human Resources Specialist as well as a copy of OPM's approval of the appraisal system contained in the record.

ID at 3; IAF, Tab 5 at 610-13,[2] Tab 25-9, Hearing Recording (HR) (testimony of the Supervisory Human Resources Specialist). On review, the appellant notes that the agency's documentation of OPM's approval is from 30 years ago and alleges that it is "altered." PFR File, Tab 4 at 8. Because the appellant has not identified why he believes the document is altered, we do not address that claim further. *Id.*

While the agency has the burden of proof, ordinarily the Board will presume that OPM has approved the agency's performance appraisal system; however, if an appellant has alleged that there is reason to believe that OPM did not approve the agency's performance appraisal system or significant changes to a previously approved system, the Board may require the agency to submit evidence of such approval. *Van Prichard v. Department of Defense*, 117 M.S.P.R. 88, ¶ 10 (2011), *aff'd per curiam*, 484 F. App'x 489 (Fed. Cir. 2012). There is no statutory requirement for renewing approval of an agency's performance appraisal system once in place. *Daigle v. Department of Veterans Affairs*, 84 M.S.P.R. 625, ¶ 12 (1999). Therefore, the gap of 30 years since OPM approved the agency's appraisal system is not a reason to doubt such approval. We agree with the administrative judge that the agency's evidence was sufficient to meet its burden as to this element. ID at 3.

Regarding the second and third elements as set forth in *Lee*, element 2 requires the agency to show that the performance standards were communicated to the appellant, and element 3 requires it to establish that the performance standards were valid. 2022 MSPB 11, ¶ 15. The administrative judge observed that the agency produced documentary and testimonial evidence demonstrating that the appellant's performance standards and the critical elements of his position were communicated to him on numerous occasions prior to the PIP. ID

---

[2] The administrative judge identified pages 620-22 as the location of OPM's approval. ID at 3. Tab 5 contains only 614 pages, so this appears to be a typographical error, and the correct location is instead pages 610-13.

at 3; IAF, Tab 5 at 377-87, 389-96, 416-419, 539-52, Tab 25-2, HR (testimony of the appellant's first-line supervisor/rating official). He further determined that the standards clearly set forth the minimum level of performance that the appellant was required to achieve to avoid removal for unacceptable performance, and that agency officials provided additional guidance regarding the critical elements. ID at 3-5. Consequently, he concluded that the standards were both valid and properly communicated to the appellant. *Id*. The appellant has not challenged these findings on review and we see no reason to disturb them.

The fourth element in *Lee* requires the agency to show that the appellant's performance during the appraisal period was unacceptable in one or more critical elements. 2022 MSPB 11, ¶ 15. As a part of making this showing, the agency must establish that the appellant's performance was unacceptable prior to his placement on the PIP. *Santos*, 990 F.3d at 1360-63.

Addressing the appellant's performance during the appraisal period and the agency's justification for placing the appellant on the PIP, the administrative judge observed that the agency notified the appellant as early as February 14, 2023, that he was "not performing in a manner to meet his critical element goals," and, in a March 28, 2023 supervisory memorandum, informed the appellant that his performance was at the "Marginal Level 2" and was "not on track with meeting expectations and need[ed] improvement." IAF, Tab 5 at 398-99, 416-419; ID at 5-7. The administrative judge further observed that for the appellant's quarter 3 (Q3) FY 2023 review, which covered the period from April 1 to June 30, 2023, his supervisor informed him that he was "failing to meet performance standards" in all three critical elements of his position and provided specific examples of the appellant's inadequate performance for each of the three elements. IAF, Tab 5 at 377-86; ID at 7. In that quarterly review, the appellant's supervisor also observed that "[i]n Q3 a Performance Improvement Plan (PIP) may be required." IAF, Tab 5 at 384. In addition to the quarterly review, the administrative judge identified that the July 27, 2023 PIP

memorandum also informed the appellant that his performance to date was unacceptable in all three critical elements of his position, identified performance deficiencies for each critical element, and listed accomplishments expected of the appellant to demonstrate performance at the Marginal Level 2/minimally acceptable level. IAF, Tab 5 at 369-71; ID at 7.

On review, the appellant appears to argue that his pre-PIP performance was not unacceptable, generally asserting that his performance was "outstanding," observing that he completed over 20 size-review cases during the period from June 2022 to February 2024, and stating that he received praise and letters of commendation for his work. PFR File, Tab 4 at 12, 20, 32. However, the appellant has not explained how his completion of the "over 20" size cases compares to the requirements set forth in his performance plan. IAF, Tab 5 at 488-99. Additionally, the June 2022 to February 2024 period that the appellant identifies encompasses some periods during which the agency did not allege that his performance was at the Unacceptable level and therefore did not serve as a basis for his placement on the PIP. *Id.* at 539-52.

Further, the appellant made this argument below, asserting that the size cases he completed during FY 2022 and FY 2023 (including periods that preceded his unacceptable performance and placement on the PIP) were excluded from consideration, and noting that he had received a positive FY 2022 performance rating. IAF, Tab 13 at 5. Accordingly, the administrative judge properly considered the evidence that the appellant identifies on review. We agree with the administrative judge that the agency has proven by substantial evidence that the appellant's performance prior to his placement on the PIP was unacceptable in all three of the critical elements of his position and that his placement on the PIP was justified.

Next, the fifth element set forth in *Lee* requires the agency to show that it warned the appellant of the inadequacies in his performance during the appraisal period and gave him an adequate opportunity to demonstrate acceptable

performance. 2022 MSPB 11, ¶ 15. In analyzing this element, the administrative judge made the following observations: the agency provided the appellant with a 90-day improvement period—in excess of the 30-day period the Board has held is sufficient to satisfy the agency's obligations; the appellant's supervisor frequently met with him during the PIP; the appellant did not argue that he had an insufficient amount of time to improve his performance; and he did not request assistance or training from his supervisor that was denied. ID at 10-11; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 10 (2013) (acknowledging that a 30-day PIP can satisfy an agency's obligation to provide an employee with a reasonable opportunity to demonstrate acceptable performance), *modified on other grounds by Lee*, 2022 MSPB 11, ¶¶ 13-17. Consequently, he concluded that the agency met its burden of showing that it provided the appellant with a reasonable opportunity to improve his performance to an acceptable level. ID at 11. The parties have not substantively challenged the administrative judge's findings on these points on review and we see no reason to disturb them. As set forth in the initial decision, the undisputed record demonstrates that the agency provided the appellant with ample opportunity to improve his performance and to receive feedback during the PIP, including by offering weekly meetings to discuss performance expectations. IAF, Tab 5 at 69, 136-58, 193-348, 363-67. Accordingly, we agree with the administrative judge's conclusion that the agency met its burden of proving this element.

Finally, the sixth element identified in *Lee* requires the agency to demonstrate that, after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. 2022 MSPB 11, ¶ 15. The administrative judge noted that the appellant's first-line supervisor maintained a PIP journal that described in considerable detail the appellant's failure to attain at least minimally acceptable performance by the end of the PIP. ID at 8; *see* IAF, Tab 5 at 124-32. The journal logged the appellant's deficiencies during the PIP period on a daily basis, linked them to specific tasks, and

identified the relevant critical elements for each deficiency. IAF, Tab 5 at 124-32 (the supervisor's PIP journal), 179-91 (the appellant's FY 2023 appraisal, issued October 17, 2023, identifying his Level 1/Unacceptable summary rating and Level 1/Unacceptable rating for each of the three critical elements).

The administrative judge further found that the removal proposal described how the appellant's performance was deficient during the PIP period for each of the three critical elements, and that the appellant's supervisor provided testimony confirming the appellant's unacceptable performance during the PIP, which the appellant did not contradict other than to generally allege that his performance was "outstanding" and that the evidence of his deficient performance was "false." ID at 9-10. Other than generally reasserting that his performance was outstanding and, as previously noted, pointing to his performance in prior appraisal periods, the appellant has not meaningfully challenged these findings on review, and we see no reason to disturb them. Accordingly, we agree with the administrative judge that the agency established this element. Having proved all of the required elements of its case-in-chief by substantial evidence, we agree with the administrative judge's finding that the agency met its burden of proof for taking a removal action under chapter 43.

The appellant's allegations of mistreatment and bias are unsupported by the record.

On review, the appellant alleges that he was mistreated by the agency and the administrative judge during the proceedings below as follows: the administrative judge exhibited "deliberate indifference" based on his failure to acknowledge the existence of the appellant's spinal injury disability in advance of the proceedings and failure to identify potential accommodations for the appellant during the hearing; the administrative judge failed to offer regular breaks during the hearing, worsening the appellant's symptoms; agency counsel asked repetitive and irrelevant questions, was insulting and rude, and often cut off the appellant and his witnesses during the hearing, which the administrative judge permitted;

and the administrative judge repeatedly encouraged the appellant to settle his appeal and implied that he did not have any chance to prevail in his case. PFR File, Tab 4 at 4, 10-11, 15-19, 23-25, 28. As a result of these and other grievances, the appellant argues that the hearing was unfair, the administrative judge exhibited bias, and the outcome of the appeal was predetermined against him. *Id.* at 16, 25.

In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Even "remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.

We have reviewed the hearing record and find no support for the appellant's allegations of bias. The administrative judge maintained a neutral and respectful tone throughout the course of the proceedings, and in fact provided the appellant with significant leeway during his questioning, often over the agency's objections, citing the appellant's pro se status. IAF, Tab 25-4, HR at 18:10-18:30 (testimony of an Attorney in the agency's Office of General Counsel), Tab 25-14, HR at 16:10-16:30, 38:15-38:40, 42:15-42:44 (testimony of the appellant). To the extent that the administrative judge interrupted the appellant during his testimony, it was to respond to agency objections to the appellant's questioning or to address other necessary procedural matters. With respect to the appellant's claim that the administrative judge failed to offer regular breaks or to anticipate and account for the appellant's physical limitations during the hearing, the

appellant has not alleged—and there is no evidence in the record—indicating that he informed the administrative judge of his need for regular breaks or that he requested any breaks and his requests were denied.

Regarding the appellant's argument that the fact the administrative judge repeatedly encouraged him to settle his appeal and allegedly suggested that he may lose his case demonstrated bias, there is no evidence in the record that the administrative judge did anything more than generally encourage the parties to engage in settlement discussions and to identify the Board's well-established public policy favoring settlement agreements. IAF, Tab 2 at 7-8, Tab 9 at 1, Tab 19 at 1. Regardless, administrative judges may make honest appraisals of the likelihood of the success of an appeal if the parties elect to pursue adjudication rather than settle the matter. *Nettles v. Department of the Army*, 52 M.S.P.R. 181, 185 (1991); *see Chakravorty v. Department of the Air Force*, 90 M.S.P.R. 304, ¶ 8 (2001) (explaining that in settlement negotiations, administrative judges are permitted to inform the parties of the relative strengths and weaknesses of their cases, and such statements do not indicate bias or coercion). Accordingly, we conclude that the appellant has failed to establish that the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Bieber*, 287 F.3d at 1362-63, and we find his claim of bias to be without merit.

The administrative judge correctly determined that the appellant failed to prove his affirmative defenses of discrimination and EEO reprisal.

As previously noted, the appellant raised affirmative defenses of discrimination based on his race, age, and disability. IAF, Tab 19 at 2. He also alleged reprisal for prior EEO activity and whistleblowing. *Id.* The administrative judge determined that the appellant failed to prove any of these claims. ID at 11-24. We turn now to his discrimination and EEO reprisal claims.

Even when, as here, an agency proves its charge of unacceptable performance under chapter 43, its action may not be sustained if it is based on a

prohibited personnel practice such as discrimination or retaliation. 5 U.S.C. §§ 2302(b)(1), (8)-(9), 4303(e), 7701(c)(2)(B); *Newton v. Department of the Navy*, 27 M.S.P.R. 156, 157-58 (1985). Title VII and the Age Discrimination in Employment Act (ADEA) require that personnel actions "shall be made free from any discrimination" based on age, race, color, religion, sex, or national origin. 29 U.S.C. § 633a(a); 42 U.S.C. § 2000e-16(a). An appellant may establish a claim of discrimination or reprisal under either Title VII or the ADEA by proving that the prohibited consideration was a motivating factor in the contested action, i.e., that discrimination or reprisal played "any part" in the agency's decision. *Pridgen v Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22, 30 (citing *Babb v. Wilkie*, 589 U.S. 399, 405-08 (2020)); *see Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 13. However, to obtain the full measure of relief available under the statute, the appellant must show that such discrimination or reprisal was a "but-for" cause of the employment outcome. *Pridgen*, 2022 MSPB 31, ¶ 22 (citing *Babb*, 589 U.S. at 413-14). The "but-for" standard generally requires a showing that the harm would not have occurred in the absence of—that is, but for—the discriminatory conduct. *Wilson*, 2024 MSPB 3, ¶ 15.

*Race discrimination*

Addressing the appellant's race discrimination claim in the initial decision, the administrative judge observed that the appellant had offered little information concerning this claim in his pleadings and failed to address any allegation of race discrimination during his hearing testimony. ID at 14; IAF, Tab 25-14, HR (testimony of the appellant). We agree.

As the administrative judge correctly noted, at the hearing, the appellant did not offer any evidence of discrimination based on his race. He did not offer any evidence suggesting in any way that he was treated more harshly than an individual who was not a member of his protected group, nor did he provide any other kind of evidence indicating that the agency's action was based on

discriminatory intent either during the hearing or in his pleadings. *See Pridgen*, 2022 MSPB 31, ¶ 24 (identifying the various methods by which an appellant may prove his claim of discrimination under Title VII). The only mention of the appellant's race discrimination claim on review is a single reference stating that his removal was the product of discrimination based on his race. PFR File, Tab 4 at 12. Accordingly, we see no reason to disturb the administrative judge's finding that the appellant did not meet his burden to prove this affirmative defense.

*Age discrimination*

In analyzing the appellant's age discrimination claim below, the administrative judge observed that there was "little (if any) evidence or argument" in the appellant's pleadings supporting his age discrimination claim and that the appellant had not mentioned age discrimination during the hearing. ID at 16; IAF, Tab 25-14, HR (testimony of the appellant). On review, the appellant argues that the administrative judge failed to consider evidence revealed during the hearing that the agency filled the vacancy created by his removal with a younger employee and moved the position to Florida, which he argues supports his age discrimination claim. PFR File, Tab 4 at 5, 9-12, 15, 21-22, 28, 31-32.

An administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 34. The Board must give deference to an administrative judge's credibility determinations when they are based explicitly or implicitly on the observation of the demeanor of witnesses testifying at a hearing. *Id.* (citing *Purifoy v. Department of Veterans Affairs*, 838 F.3d 1367, 1372-73 (Fed. Cir. 2016); *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002)). Here, the administrative judge implicitly credited the testimony of the proposing and deciding officials denying that age was a factor in their actions. ID at 26. The appellant's arguments do not provide sufficiently sound reasons for us to overturn these credibility findings. *Haas*,

2022 MSPB 36, ¶¶ 6, 31, 34 (declining to overturn an administrative judge's implicit demeanor-based determination to credit the testimony of an agency official denying that an appellant's protected EEO activity had any effect on his decision to propose the appellant's removal).

Further, the appellant's evidence that a younger individual was hired following his removal is not particularly persuasive evidence of age discrimination. As the agency notes in its response, the appellant's first-line supervisor testified on cross-examination during the hearing that, after the appellant was removed from his position, the agency promoted another agency employee—who had previously held the position before the appellant's hire—to the appellant's former position. IAF, Tab 25-3, HR at 14:00-14:35 (testimony of the appellant's first-line supervisor). In response to the appellant's question about his replacement's age, the appellant's supervisor testified that he was not aware of her age but, if he "had to guess," he would guess that she was in her "forties." *Id.* at 14:35-14:49. The appellant's second-line supervisor further testified that the employee who was hired to fill the appellant's former position was employed elsewhere within the agency at the time of the appellant's removal and requested to be reassigned to the position, which was the same grade as her existing position. IAF, Tab 25-6, HR at 43:30-44:40 (testimony of the appellant's second-line supervisor). The second-line supervisor clarified that, in her role, she could reopen the position to any state within her assigned area, which included Florida and Georgia, and that she could direct hire any person who met the eligibility requirements for the position. *Id.* at 43:30-44:19.

As the administrative judge correctly observed, aside from asserting that his termination was due to discrimination based on his age, the appellant did not otherwise refer to his age discrimination claim anywhere in his pleadings or specifically allege that the agency's decision to hire his replacement was due to discrimination based on age. ID at 15-16. Aside from the above limited exchanges, the appellant failed to elicit any other testimony during the hearing

regarding any potential age discrimination claim. The fact that an employee was replaced by a younger individual alone is insufficient to prove an age discrimination claim. *O'Hearn v. General Services Administration*, 41 M.S.P.R. 280, 286 (1989), *aff'd*, 902 F.2d 44 (Fed. Cir. 1990) (Table). Therefore, even considering the testimony identified by the appellant on review, we agree with the administrative judge that the appellant failed to establish that discrimination based on age was a motivating factor in the agency's decision to remove him. Therefore, he failed to prove this affirmative defense.

*EEO reprisal*

With respect to his affirmative defense of reprisal for his prior EEO activity, the appellant argues that, after he filed his EEO complaint, his supervisor retaliated by preparing the "bogus" PIP and negatively rating the appellant's performance for the first time. PFR File, Tab 4 at 12-13, 19, 28. There are multiple methods of proving a Title VII affirmative defense, but whatever method of proof an appellant chooses, he must show that discrimination was a motivating factor in, or but-for cause of, the action under appeal. *Wilson*, 2024 MSPB 3, ¶¶ 11-12; *Pridgen*, 2022 MSPB 31, ¶¶ 20-24. In the absence of direct evidence, one way an appellant may prove that discrimination was a but-for cause of the agency's action is under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), under which the appellant must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *Wilson*, 2024 MSPB 3, ¶ 16. Once the appellant has made out a prima facie case, the burden shifts to the agency to articulate a nondiscriminatory explanation for the action. *Id.*, ¶ 17. If the agency meets this burden, the burden shifts back to the appellant to show that the agency's reason is pretextual or that it was more likely than not that the agency was motivated by discrimination. *Id.*

Applying this framework in the initial decision, the administrative judge determined that the appellant's first-line supervisor, who was also the proposing official, acknowledged that he was aware of the appellant's prior EEO complaint but denied that the complaint had any effect on his decision to propose the appellant's removal. ID at 13-15; IAF, Tab 25-2, HR at 52:45-53:00, 55:00-55:05 (testimony of the appellant's first-line supervisor). Additionally, the appellant's second-line supervisor testified that she had no knowledge of the appellant's EEO activity, while the deciding official did not offer testimony about his knowledge of the appellant's EEO activity but nevertheless testified that EEO activity played no role in his removal determination. ID at 14; IAF, Tab 25-6, HR (testimony of the appellant's second-line supervisor), Tab 25-7, HR (testimony of the deciding official). Despite acknowledging the proposing official's potential knowledge of the appellant's EEO activity, the administrative judge nevertheless concluded that the agency offered a legitimate, non-retaliatory reason for its action, namely the significant evidence of the appellant's unacceptable performance in all three critical elements of his position. ID at 15. On that basis, the administrative judge determined that the appellant failed to prove that his EEO complaint was a motivating factor in his removal. *Id.* The appellant has not challenged these findings on review, and we see no reason to disturb them.

Despite our agreement with these conclusions, we take this opportunity to clarify the administrative judge's findings on one point. In addressing the appellant's EEO reprisal claim, the administrative judge identified that the appellant filed his EEO complaint in April 2023, but did not identify the basis for the appellant's prior EEO activity. IAF, Tab 19 at 2, Tab 26 at 14-15. In his initial appeal filing, the appellant identified that he alleged disability discrimination in his April 2023 EEO complaint. IAF, Tab 1 at 26. Additionally, a copy of the EEO counselor's report included in the record identifies disability as one of the bases for his complaint and lists the appellant's conditions as severe spinal cord injury, high blood pressure, and diabetes. IAF, Tab 17 at 77. It also

refers to claims based on race, color, and age. *Id.* Thus, the appellant's EEO reprisal claim falls under both Title VII and Rehabilitation Act standards.

Although the "motivating factor" standard is applicable to claims alleging retaliation for EEO activity pertaining to discrimination under Title VII, disability discrimination claims are adjudicated under the Rehabilitation Act, which has incorporated by reference the standards of the Americans with Disabilities Act (ADA) of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008. *Pridgen*, 2022 MSPB 31, ¶ 35. Under the ADA, an appellant must prove "but-for" causation in the first instance when raising a claim of reprisal for filing EEO complaints alleging disability discrimination. *Id.*, ¶¶ 43-47. Further, the *McDonnell Douglas* shifting burden test generally is appropriate only for determining whether discrimination or retaliation was a but-for cause of the employment action, not whether it was a motivating factor. *Wilson*, 2024 MSPB 3, ¶ 16 & n.7. Nevertheless, regardless of the standard applied, we agree with the administrative judge's finding that the appellant failed to prove that his prior EEO activity was a motivating factor in his removal, and we also find that he did not meet the higher "but-for" standard of causation. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶¶ 31-33.

*Disability discrimination*

For the appellant's disability discrimination claim, the administrative judge noted that the appellant provided little, if any, testimony about this claim during the hearing, so the basis of his disability discrimination claim was unclear. ID at 19. However, based on the appellant's pleadings, the administrative judge concluded that the appellant appeared to be alleging discrimination based on reasonable accommodation and disparate treatment theories. *Id.*

Addressing the appellant's reasonable accommodation claim in the initial decision, the administrative judge assumed, without deciding, that the appellant established that he was an individual with a disability. ID at 21 n.9. The administrative judge found that the appellant initially requested a reasonable

accommodation of full-time telework in January 2023, based on his treatment for hypertension and diabetes in Louisiana, after which the agency initiated the interactive process. ID at 20-21 & n.9; IAF, Tab 5 at 411-14, 522-24. He further noted that, after the appellant modified his request to permit him to work from Louisiana 6 days per pay period, the agency denied the requested accommodation —concluding that the provided medical documentation did not support the request —and offered an alternative accommodation that would permit the appellant to work remotely from Louisiana on the day before his medical appointments, the day of the appointments, and the day after his appointments. ID at 21-22; IAF, Tab 5 at 411-14. The appellant requested reconsideration, which the agency denied, and the appellant ultimately accepted the agency's alternative accommodation offer. ID at 22; IAF, Tab 5 at 403-05, 407-08, Tab 25-2, HR (testimony of the appellant's first-line supervisor). Based on the above, the administrative judge determined that the agency engaged in the reasonable accommodation interactive process and provided the appellant with a reasonable accommodation and that therefore the appellant failed to establish this claim. ID at 22-23.

With respect to his disparate treatment claim, the administrative judge determined that the appellant had not offered any of the forms of evidence identified by *Pridgen* for analyzing a disparate treatment disability discrimination claim, including direct or indirect evidence of discriminatory animus, evidence that the agency's reasons for the removal were pretextual, or comparator evidence showing that the agency treated the appellant differently than similarly situated non-disabled employees. ID at 23. Consequently, the administrative judge determined that the appellant failed to meet his burden of showing that his disability was a motivating factor in, or a but-for cause of, the agency's action. ID at 23-24.

On review, the appellant has not challenged the administrative judge's specific findings on these points. Instead, he generally reasserts that he is an

individual with a disability and that the agency denied his requested accommodation. PFR File, Tab 4 at 14-15, 19, 22-24.

To the extent that the appellant takes issue with the administrative judge's statement that he questioned whether the appellant was "disabled" under the Rehabilitation Act but would assume he was for purposes of the appeal, we discern no error. ID at 21 n.9. As discussed further below, the administrative judge resolved the appellant's discrimination claims on the bases that the agency provided a reasonable accommodation and the appellant did not prove that his disability was motivating factor in, or but-for cause of, his removal. Therefore, the administrative judge did not need to make a determination as to whether the appellant was disabled to resolve his claims. *See Haas*, 2022 MSPB 36, ¶ 29 n.9 (recognizing that although only an otherwise qualified individual with a disability is entitled to relief under the ADA, some disability claims can be resolved on the basis that an individual is not disabled without determining if he is otherwise qualified because an appellant has the burden of proving both matters); *Kirkland v. Department of Homeland Security*, 119 M.S.P.R. 74, ¶ 18 (2013) (explaining that an appellant alleging that she was denied a reasonable accommodation had the burden of proving that a reasonable accommodation would have enabled her to perform in her position); *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 46 (2012) (stating that when an agency has already articulated a nondiscriminatory reason for its adverse action, the inquiry proceeds directly to the ultimate question of whether, upon weighing all of the evidence, the appellant has met her burden of proving that the agency intentionally discriminated against her based on disability). Further, we agree with the administrative judge's determination that the appellant did not prove his disability discrimination claims.

Turning first to the appellant's denial of accommodation claim, although the appellant reargues on review that he should have been granted his preferred accommodation of remote work from Louisiana, the Board has held that an

employee is not entitled to the accommodation of his choice. *Henry v. Department of Veterans Affairs*, 108 M.S.P.R. 458, ¶ 22 (2008). Instead, the agency is only obligated to provide the appellant with an effective accommodation. *See Dominica H. v. Department of Veterans Affairs*, EEOC Appeal No. 2022004884, 2025 WL 1025192, at *3 (Mar. 12, 2025) (concluding that an appellant could not prevail on her claim that she was denied reasonable accommodation when she rejected an agency's offer of an effective accommodation); 29 C.F.R. part 1630, app. § 1630.9 (stating that "if more than one . . . accommodations will enable the individual to perform the essential functions . . . , the preference of the individual with the disability should be given primary consideration," but "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations"); Equal Employment Opportunity Commission, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA, No. 915.002, Questions 9, 20 (Oct. 17, 2002) ("The employer may choose among reasonable accommodations as long as the chosen accommodation is effective"; "[a]n employer need not provide an employee's preferred accommodation as long as the employer provides an effective accommodation."). The agency met its obligation here when it granted an accommodation that permitted the appellant to work remotely from Louisiana for the 3-day period surrounding his doctor appointments—an accommodation the appellant ultimately accepted—concluding that the medical evidence the appellant provided was insufficient to support his preferred accommodation of remote work. IAF, Tab 5 at 411-14, 421-27. Accordingly, we agree that the appellant failed to prove his reasonable accommodation claim.

We also agree with the administrative judge that the appellant failed to prove his disparate treatment claim. As the administrative judge identified with respect to the appellant's other affirmative defenses, the appellant did not offer any evidence or testimony in support of his disparate treatment disability

discrimination claim below. He also has not done so on review. Therefore, we agree that he failed to prove that discrimination on the basis of disability was either a motivating factor in, or a but-for cause of, the agency's decision to remove him and so he failed to prove this affirmative defense. ID at 23-24; *see Pridgen*, 2022 MSPB 31, ¶¶ 37-42.

We nevertheless must remand the appeal to the administrative judge to address the appellant's whistleblower retaliation affirmative defense.

In the initial decision, the administrative judge determined that the appellant failed to prove his whistleblower retaliation affirmative defense. ID at 16-17. In doing so, the administrative judge observed that the appellant had not offered any testimony concerning his claim or alleged that he made any protected disclosures or engaged in any protected activity for which the agency retaliated against him by removing him. ID at 17. Instead, the administrative judge observed, the appellant appeared to be alleging that his whistleblower retaliation claim rested on his argument that he engaged in protected activity by filing his April 2023 EEO complaint. *Id.* However, the administrative judge rejected this argument, concluding that the Board has held that a disclosure of discrimination in connection with an EEO complaint did not constitute protected activity under the Whistleblower Protection Enhancement Act of 2012. *Id.*

Following the issuance of the initial decision in this case, however, the Board issued decisions in *Reese v. Department of the Navy*, 2025 MSPB 1, and *Holman v. Department of the Army*, 2025 MSPB 2. In *Reese*, 2025 MSPB 1, ¶¶ 44-52, the Board held that disclosures concerning alleged violations of Title VII may constitute protected activity under 5 U.S.C. § 2302(b)(9)(C) if made to an agency "component responsible for internal investigation or review." In *Holman*, 2025 MSPB 2, ¶¶ 12-13, the Board found for the first time that an agency's EEO office is such a component and, therefore, that speaking with an EEO counselor and filing an EEO complaint both are protected activity under 5 U.S.C. § 2302(b)(9)(C). A copy of the EEO counselor's report for the

appellant's complaint is included in the record and identifies that the appellant filed his informal complaint on March 31, 2023, and states that he alleged in his complaint that he was subjected to discrimination, harassment, and reprisal on the basis of his race, color, age, and disability. IAF, Tab 17 at 75-79. The appellant received a right to file a formal complaint on April 12, 2023, and he appears to have timely filed a formal complaint thereafter. IAF, Tab 1 at 26, 48-58, Tab 5 at 60-61.

As previously noted, the appellant alleged in his initial filing that he was removed in retaliation for his EEO activity, and he continued to argue the same throughout the proceedings below. IAF, Tab 1 at 18, 26, 39-41, Tab 13 at 5-6, 11-13, 20, 33, Tab 25-14, HR at 20:30-22:00 (testimony of the appellant). The Board requires its administrative judges to apprise appellants of the applicable burdens of proving a particular affirmative defense, as well as the kind of evidence required to meet those burdens. *Erkins v. U.S. Postal Service*, 108 M.S.P.R. 367, ¶ 8 (2008). When an administrative judge fails to inform the parties of their burden and methods of proof, and the appellant has not withdrawn or abandoned the affirmative defense, the Board typically remands the appeal so the administrative judge can afford such notice and an opportunity to submit evidence and argument under the proper standard. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 7 (2015); *Erkins*, 108 M.S.P.R. 367, ¶ 8. Because the administrative judge did not have the benefit of *Reese* and *Holman*, he did not provide the parties with notice of their respective burdens of proof regarding the appellant's potential whistleblower retaliation claim under 5 U.S.C. § 2302(b)(9)(C).

We recognize that the administrative judge analyzed the same activity under Title VII. However, different standards apply to a claim of reprisal for activity protected under 5 U.S.C. § 2302(b)(9)(C). Specifically, when such claims are made in the context of an otherwise appealable action, as here, the appellant must prove by preponderant evidence that he made a protected

disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the personnel action at issue. *Pridgen*, 2022 MSPB 31, ¶¶ 49-50. If the appellant makes this showing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the personnel action absent the protected disclosure or activity. *Id.*

Accordingly, remand of the appeal is required for further development of the record and a finding on the merits of the whistleblower reprisal affirmative defense. The administrative judge may adopt his previous findings regarding the performance-based action and the appellant's remaining affirmative defenses, as modified above.

## ORDER

For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:     _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.